(15 Misc. Rep. 72.)

WHITNEY v. WHITNEY.

(Supreme Court, Special Term, Monroe County. November, 1895.)

HUSBAND AND WIFE—CONTRACT FOR SEPARATION—MARRIED WOMAN'S ACT.
　　Laws 1892, c. 594, providing that a married woman "may contract with her husband or any other person to the same extent, with like effect, and in the same form as if unmarried," also provides as follows: "But nothing herein contained shall be construed to authorize the husband and wife to enter into any contract by which the marriage relation shall be altered or dissolved." *Held*, that the act does not authorize the making of a contract between husband and wife by which, in consideration of their separation, the husband agrees to pay the wife an allowance.

Action by Clara G. Whitney against W. Wallace Whitney, her husband, to recover for breach of a contract to pay the plaintiff a weekly allowance on condition that the parties should "live separate and apart from each other the same as if they were unmarried." Defendant demurs to the complaint. Sustained.

C. D. Kiehl, for plaintiff.
Edward Webster, for defendant.

ADAMS, J. At common law executory contracts between husband and wife were absolutely void, and no instance of their enforcement by the courts can be found among the reported cases in this state or in England. It is true that courts of equity have up-

held what are termed "deeds of separation," by which, through the medium of some third party, acting as a trustee, provision is made by a husband for the support of his wife, although in doing so they have taken occasion to say that such contracts are at variance with the policy of the law, and it was remarked by Lord Chief Justice Denman, in Jones v. Waite, 5 Bing. N. C. 341, that "many of the judges gave effect to them for any purpose　*　*　* with reluctance, and would have paused if the question had been new." It will be observed, also, that even a court of equity will not interfere to enforce an agreement of this character which is founded upon no other consideration than a mere voluntary separation of the parties; while in a court of law, until a comparatively recent period, no effect could be given to it, whatever might have been the consideration.    Beach v. Beach, 2 Hill, 260; Griffin v. Banks, 37 N. Y. 621.

It is insisted, however, that the common-law rule has been so far modified by statutory enactment that a contract like the one sued upon may now be entered into by husband and wife, and that, when thus entered into, it will be enforced by the courts.    That the tendency of legislation in this state for the past 50 years has been to remove the common-law restrictions which hampered a married woman in the enjoyment of her property and personal rights is a fact well known by every one; and in order that she might be placed in the exact position of a feme sole, the legislature has recently enacted that she "may contract with her husband or any other person to the same extent, with like effect, and in the same form as if unmarried."    Laws 1892, c. 594.    It is difficult to see how less than this could be accorded married women in view of preceding legislation, but it will be noticed that, in this removal of the "last barrier," the legislature was careful to limit its action to such rights and liabilities as are strictly legal in their nature, and therefore we find embodied in the act in question this provision:

"But nothing herein contained shall be construed to authorize the husband and wife to enter into any contract by which the marriage relation shall be altered or dissolved, or to relieve the husband from his liability to support his wife."

Now, the contract which lies at the foundation of this action is one which very materially alters the marital relations of the parties. By its terms the husband and wife have voluntarily separated, and are hereafter to live as strangers to each other.    In consideration of this practical dissolution of the marriage tie, the husband agrees to pay the wife a certain sum weekly, and, he failing to fulfill the obligation thus assumed, she comes into a court of law and invokes its aid in the enforcement of the contract.    Can anything more subversive of social order, sound public policy, or good morals be imagined?    To give to the act of 1892 the construction contended for would tend to disintegrate society and resolve marriage into the merest farce.    This court is unwilling to believe that any such anomalous condition of affairs was within the contemplation of the legislature, and therefore it must hold that plaintiff's action cannot be maintained.